Dan Stormer, Esq. [S.B. # 101967]
Brian Olney, Esq. [S.B. #298089]
Rebecca Brown, Esq. [S.B. #336638]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile:  (626) 577-7079
Emails: bolney@hadsellstormer.com
          rbrown@hadsellstormer.com

Attorneys for Plaintiff
MATILDE GARZA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATILDE GARZA, individually and as surviving heir and successor in interest of ANTONIO F. GARZA, JR. (deceased),<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO; BILL ABERNATHY; NICHOLAS KRINDER; and DOES 1, 3-9.<br><br>Defendants. | Case No.: 23-cv-01849<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. 42 U.S.C. § 1983 – Excessive Force<br>2. 42 U.S.C. § 1983 – Deprivation of Rights of Plaintiff to Familial Relationship with Decedent<br>3. 42 U.S.C. § 1983 – Failure to Intervene<br>4. 42 U.S.C. § 12131 – Violation of Title II of the Americans with Disabilities Act<br>5. 29 U.S.C. § 794 – Violation of the Rehabilitation Act<br>6. Wrongful Death<br>7. Cal. Civil Code § 52.1 – Bane Act<br>8. Assault<br>9. Battery<br>10. Negligence<br><br>**[DEMAND FOR JURY TRIAL]** |

COMPLAINT FOR DAMAGES

**INTRODUCTION**

1.      In the morning of February 5, 2023, deputies from the San Bernardino County Sheriff's Department ("SBSD"), deputies from the Riverside County Sheriff's Department ("RSD"), and officers from the California Highway Patrol ("CHP") chased down Antonio F. F. Garza, Jr., who was experiencing a mental health crisis, and shot him dead. Mr. Garza was a forty-four-year-old Latino man whose serious mental illness was well known to the SBSD. Mr. Garza was frightened, alone, and attempting to flee. Rather than de-escalate the encounter, the involved officers needlessly escalated the encounter and SBSD Deputies Bill Abernathy and Nicholas Krinder shot Mr. Garza twelve times, including at least twice in the back and at least twice after he collapsed to the ground.

2.      Less than one hour before Deputies Abernathy and Krinder killed Mr. Garza, SBSD deputies had responded to a call regarding Mr. Garza allegedly burning items on his property in Yucca Valley, California. Due to his mental illness, Mr. Garza was terrified of interacting with law enforcement. When the SBSD deputies arrived at his property, Mr. Garza left the property in his truck.

3.      The SBSD deputies pursued Mr. Garza for approximately thirty miles westbound on Highway 62 to the Interstate 10 Freeway. RSD and CHP personnel joined the pursuit of Mr. Garza. Near the end of Whitewater Cutoff in Whitewater, California, Mr. Garza pulled over and exited his truck. Mr. Garza then ran into the desert, away from the many law enforcement officers pursuing him. The officers chased after Mr. Garza on foot, surrounding him from multiple directions and pointing their guns at him. Mr. Garza never harmed, attempted to harm, or threatened to harm any law enforcement officers or civilians.

4.      Police officers in California are trained to safely de-escalate interactions with individuals suffering from mental illness. Instead, these deputies chose to use lethal force on a peaceful mentally ill man and shot him twelve times.

5.      The conduct of the SBSD Deputies was outrageous. Their tragic killing of

Mr. Garza resulted from Defendants' lack of planning, failure to deescalate the situation, use of excessive force, and inadequate and misapplied training. Defendants' unjustifiable actions ended Mr. Garza's life and robbed Plaintiff Matilde Garza of her only son.

6.      Ms. Garza—Mr. Garza's mother and sole heir—brings this action in her individual capacity and as her son's successor in interest for damages against Defendants for general, compensatory, and statutory damages, costs and attorneys' fees, declaratory and injunctive relief resulting from Defendants' unlawful and egregious conduct, as alleged herein. Additionally, Plaintiff seeks punitive damages against the individual Defendants.

**PARTIES**

7.      Plaintiff Matilde Garza is the mother and next-of-kin of the decedent Antonio F. Garza, Jr.  Mr. Garza was shot and killed by Defendants and/or their agents, subjecting Matilde Garza to injuries and damages as described herein. Ms. Garza sues Defendants in her individual capacity for the violation of her rights under state and federal law, and as Mr. Garza's successor in interest for the violation of his rights under state and federal law.

8.      Defendant County of San Bernardino is a duly organized public entity existing under the laws of the State of California. The San Bernardino County Sheriff's Department ("SBSD") is the law enforcement agency for Defendant County of San Bernardino. The County of San Bernardino is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including SBSD and its agents and employees. At all relevant times, Defendant County of San Bernardino was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of the SBSD and its agents and employees complied with the laws of the United States and the State of California.

9.      Defendant Bill Abernathy is an SBSD deputy who pursued Mr. Garza by car and on foot and without justification shot and killed Mr. Garza.

COMPLAINT FOR DAMAGES              -2-

10.     Defendant Nicholas Krinder is an SBSD deputy who pursued Mr. Garza by car and on foot and without justification shot and killed Mr. Garza.

11.     Defendant Doe 1 is an SBSD deputy who pursued Mr. Garza by car and on foot and pointed his gun at Mr. Garza alongside Defendants Bill Abernathy and Nicholas Krinder.

12.     Doe 2 is a law enforcement officer employed by the California Highway Patrol (CHP) who pursued Mr. Garza on foot and pointed his gun at Mr. Garza alongside Defendants Bill Abernathy and Nicholas Krinder. At the time of the incident, Doe 2 was acting under color of law within the course and scope of his duties and with the complete authority and ratification of his principal, CHP.

13.     Defendants Does 3-9 are SBSD deputies who pursued Mr. Garza by car.

14.     At all relevant times, the County of San Bernardino was the employer of Defendants Bill Abernathy, Nicholas Krinder, and Does 1 and 3-9 (collectively the "Defendant Deputies"). Defendants Bill Abernathy, Nicholas Krinder, and Does 1 and 3-9 are Deputies for the SBSD. At the time of the incident, Defendants Bill Abernathy, Nicholas Krinder, and Does 1 and 3-9 were acting under color of law within the course and scope of their duties as Deputies for the SBSD. Defendants Bill Abernathy, Nicholas Krinder, and Does 1 and 3-9 were acting with the complete authority and ratification of their principal, Defendant County of San Bernardino.

15.     On information and belief, Bill Abernathy, Nicholas Krinder, and Does 1 and 3-9 at all relevant times were, and are, residents of the County of San Bernardino, California. In doing the acts and failing to act as hereinafter described, Defendants Bill Abernathy, Nicholas Krinder, and Does 1 and 3-9 were acting on the implied and actual permission and consent of the County of San Bernardino. The true names and capacities of Does 1 and 3-9 are unknown to Plaintiff, who otherwise sue these Defendants by such fictitious names. Plaintiff will amend this Complaint or seek leave to do so when the true names and capacities of these Defendants have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the acts, omissions,

1    injuries, and damages alleged herein.

2         16.    Plaintiff is informed and believe and thereon allege that at all times

3    relevant herein, Defendants and each of them were the agents, employees, servants,

4    joint venturers, partners, and/or co-conspirators of the other Defendants named in this

5    Complaint and that at all times, each of the Defendants was acting within the course and

6    scope of said relationship with Defendants.

7         17.    All of the acts and omissions complained of herein by Plaintiff against

8    Defendants were done and performed by said Defendants by and through their

9    authorized agents, servants and/or employees, all of whom at all relevant times herein

10   were acting within the course, purpose, and scope of said agency, service, and/or

11   employment capacity. Moreover, Defendants and their agents ratified all of the acts and

12   omissions complained of herein. Whenever and wherever reference is made in this

13   Complaint for Damages to any act or failure to act by a Defendant or Defendants, such

14   allegations and references shall also be deemed to mean the acts and failures to act of

15   each Defendant acting individually, jointly, and severally.

16                                    **JURISDICTION**

17        18.    This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and

18   1343(a) because Plaintiff asserts claims arising under the laws of the United States

19   including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United

20   States Constitution. Plaintiff's state-law claims form part of the same case and

21   controversy and are within the supplemental jurisdiction of the Court pursuant to 28

22   U.S.C. § 1367.

23                                       **VENUE**

24        19.    Venue is proper in the United States District Court of the Central District

25   of California pursuant to 28 U.S.C. § 1391(b)(1) as the Central District is "a judicial

26   district in which any defendant resides" and "all defendants are residents of the State in

27   which the district is located." Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2),

28   as the Central District is "a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred[.]" Venue is proper in this Court because all incidents, events, and occurrences giving rise to this action occurred in the Counties of San Bernardino and Riverside, California.

## ADMINISTRATIVE PREREQUISITES

20.     Plaintiff exhausted her administrative remedies by timely filing governmental tort claims with the County of San Bernardino pursuant to California Government Code sections 910 *et seq.* Plaintiff filed a tort claim in her individual capacity on April 6, 2023. The County rejected this tort claim when it failed to respond to the claim by May 22, 2023, the forty-five day time period set forth in California Government Code Section 911.6. Plaintiff also filed a tort claim as successor in interest to Antonio F. Garza, Jr. on May 15, 2023. The County likewise rejected this tort claim by failing to respond to the claim by June 29, 2023, the forty-five day time period set forth in California Government Code Section 911.6.

## FACTUAL ALLEGATIONS

21.     Antonio F. Garza, Jr. was a successful business owner and beloved family member who lived in the Joshua Tree area for most of his life.

22.     In his youth, Mr. Garza excelled at sports, including cross country and wrestling.

23.     Mr. Garza owned a metal fabrication company and worked as a maintenance mechanic. He was a long-time member of Local 12 Operating Engineers. He loved riding his Harley Davidson motorcycle, working in his welding shop, caring for his dogs, and spending time with his family.

24.     In the summer of 2020, Mr. Garza's mental health began to decline. Mr. Garza began to suffer from symptoms consistent with schizophrenia, including severe delusions, paranoia, hallucinations, and erratic behavior. Mr. Garza believed that people were conspiring to surveil him, steal from him, and/or harm him. Mr. Garza became extremely fearful of law enforcement and believed that law enforcement officers were conspiring against him.

COMPLAINT FOR DAMAGES                         -5-

25.     Mr. Garza's family became increasingly worried about his mental health. Mr. Garza's family observed that he was highly anxious and behaving erratically. For months, Mr. Garza's family searched for mental health treatment options and resources for Mr. Garza. They reached out to the various mental health treatment centers, crisis centers, hospitals, and attorneys to no avail. Family members pleaded with Mr. Garza to seek mental health treatment, but he did not believe that he needed help. They were consistently told that Mr. Garza could be compelled to receive mental health treatment only if he harmed himself, harmed others, or was arrested.

26.     In January 2021, Mr. Garza came to the home of his sister, Berta Garza Logan, after she told him that he could not come to her home. Ms. Garza Logan called the San Bernardino County Sheriff's Department ("SBSD") to seek assistance. Mr. Garza left the property before an SBSD deputy arrived. The family member asked the responding SBSD deputy how she could seek help for Mr. Garza. The deputy informed her that Mr. Garza could not be compelled to seek mental health treatment unless he harmed himself, harmed others, or was arrested. The deputy agreed to conduct a wellness check on Mr. Garza.

27.     Throughout January 2021, Mr. Garza's family members called the SBSD multiple times, requesting that wellness checks be performed on Mr. Garza due to concerns about his mental illness.

28.     On February 5, 2021, SBSD deputies arrested Mr. Garza following a wellness check requested by Plaintiff.

29.     Following the arrest, Mr. Garza was held in SBSD custody in general population at the West Valley Detention Center until May 13, 2021. West Valley Detention Center is managed and operated by SBSD. On May 13, 2021, while Mr. Garza's case was still pre-trial, Mr. Garza's family posted his bail, and he was released from custody.

30.     On March 18, 2022, Mr. Garza's attorney declared a doubt as to Mr. Garza's mental competence pursuant to California Penal Code § 1368. The court filed

an order for a psychiatric appointment for Mr. Garza and suspended the criminal proceedings against him.

31.     On August 16, 2022, Mr. Garza was remanded into custody. On information and belief, Mr. Garza was to be held in jail for one week and would then be transferred to a mental health treatment facility.

32.     However, Mr. Garza was never transferred to a mental health facility and was instead held in SBSD custody in general population at the West Valley Detention Center for five months while criminal proceedings against him were suspended. Hearings were held regarding Mr. Garza's placement on September 29, 2022, October 21, 2022, and January 20, 2023. At these hearings, the Joshua Tree Superior Court judge presiding over Mr. Garza's case repeatedly expressed frustration that Mr. Garza had not been placed in a mental health treatment program.

33.     Mr. Garza's mental health further deteriorated while he was incarcerated for five months in general population without access to adequate mental health treatment and cut off from his family and loved ones. On information and belief, Mr. Garza did not receive mental health care or medication while incarcerated. He did not understand why he was incarcerated and was traumatized by the experience. On information and belief, there was in fact an approximately eight-hundred-person waitlist for mental health treatment and Mr. Garza was never even placed on the waitlist.

34.     On January 24, 2023, the Court ordered that Mr. Garza be released from custody on his own recognizance, with the condition that he report to the Department of Behavioral Health with Valley Star in Yucca Valley, California within forty-eight hours of his release and participate in their treatment program.

35.     On January 27, 2023, Ms. Garza drove her son to the Department of Behavioral Health with Valley Star in Yucca Valley. Mr. Garza attempted to enroll in treatment, but he was informed that there was a four month wait to begin treatment. Mr. Garza's family members then helped him apply for MediCal so that he would be able to afford treatment once he was able to receive treatment.

36.    On information and belief, in the morning of February 5, 2023, Mr. Garza was experiencing a mental health crisis, which included delusions regarding people conspiring against him. Mr. Garza began to burn some documents and electronics on his own property located at Indio Avenue and Canterbury Street in Yucca Valley.

37.    At or about 10:12 a.m., SBSD deputies came to Mr. Garza's property in response to a call regarding Mr. Garza burning items on his property.

38.    On information and belief, once the SBSD deputies arrived at Mr. Garza's property, Mr. Garza became frightened of the law enforcement officers and left the property in his pickup truck.

39.    Mr. Garza drove approximately thirty miles westbound on Highway 62 to Interstate 10. The SBSD deputies pursued Mr. Garza on Highway 62 and then on Interstate 10. On information and belief, Mr. Garza maintained a speed at or slightly above the speed of traffic. Riverside County Sheriff's Department ("RSD") deputies and California Highway Patrol ("CHP") officers joined the vehicle pursuit of Mr. Garza.

40.    At approximately 10:55 a.m., at or near the end of Whitewater Cutoff road in Whitewater, California, Mr. Garza pulled over off the north side of Interstate 10. He parked the truck in the dirt north of the freeway, perpendicular to traffic.

41.    The area to the north of the freeway near the end of Whitewater Cutoff is rough desert terrain. The ground is uneven and covered in dried shrubs. There are a few larger bushes. The area is dusty and often windy. Whitewater Cutoff is a small road with no lane markings. It ends in a cul-de-sac. To the east of Whitewater Cutoff are hills with windmills. To the west and north of Whitewater Cutoff is desert terrain. To the south is the Interstate 10. There were no civilians present in this area and no structures or items located in this area.

42.    Several law enforcement vehicles blocked the two or three lanes of traffic on the right side of the freeway, stopping traffic. At least ten police officers exited their vehicles.

43. Mr. Garza then exited his truck and began running north, away from the freeway and police officers. Mr. Garza climbed over a fence on the side of the freeway and continued running north into the desert. On information and belief, Mr. Garza was suffering from fear-inducing delusions, was very afraid, and was attempting to escape from the officers. At least four police officers, including Defendant Deputies Abernathy, Krinder, Doe 1 (the "Defendant Deputies"), and CHP officer Doe 2 chased after Mr. Garza, with their guns drawn and pointed at him.

44. After a few seconds, Mr. Garza stopped running and faced the Defendant Deputies and the officer. He was standing on Whitewater Cutoff, approximately ten to fifteen feet north of the Defendant Deputies and the officer.

45. The Defendant Deputies and the officer formed a line between Mr. Garza and the freeway. Mr. Garza slowly backed away from the officers, walking north up Whitewater Cutoff. The Defendant Deputies and the officer continued advancing toward Mr. Garza with their guns drawn and pointed at him. Mr. Garza continued to slowly back away from the Defendant Deputies and the officer for approximately twenty-five seconds, and the officers continued to advance towards him with their guns pointed at him.

46. Mr. Garza bounced a few times on his feet as if he were preparing to run and then turned right and ran away from the officers in a northwest direction, away from the freeway and into the desert. The Defendant Deputies and the officer ran after Mr. Garza. Two of the Defendant Deputies that were chasing him stood in front of Mr. Garza with their guns pointed at him and the other Defendant Deputy (Doe 1) and the CHP officer (Doe 2) that were chasing him stood off to the side. There were large rocks behind Mr. Garza. Mr. Garza was trapped with nowhere to go.

47. Mr. Garza turned around and ran east towards Whitewater Cutoff, away from the three SBSD Deputies and the officer CHP, Doe 2. The three SBSD Deputies and the CHP officer ran after him. Mr. Garza stopped on the left side of Whitewater Cutoff. He turned to face the three SBSD Deputies and the CHP officer and walked

backwards away from them, heading north. The three SBSD Defendant Deputies formed a line approximately ten feet in front of Mr. Garza and advanced towards him with their guns pointed at him. The CHP officer was approximately ten to twenty yards west of Mr. Garza.

48.     Mr. Garza began running west again, away from the three SBSD Deputies in front of him. Mr. Garza was only able to take a few steps.

49.     The three SBSD Deputies and the CHP officer did not attempt to de-escalate the situation or communicate effectively with Mr. Garza.

50.     Instead, at approximately 10:57 a.m., Defendants Abernathy and Krinder shot Mr. Garza twelve times. Mr. Garza's autopsy revealed that Defendants Abernathy and Krinder shot Mr. Garza at least twice in the back and at least twice after he had collapsed to the ground. The autopsy report concluded that Mr. Garza died as a result of multiple gunshot wounds.

51.     At no time throughout his encounter with law enforcement did Mr. Garza pose an immediate threat of death or serious bodily injury to any person. Mr. Garza never harmed, attempted to harm, or threatened to harm any law enforcement officers or civilians.

52.     Mr. Garza was declared dead at approximately 11:24 a.m. He was just forty-four years old.

53.     In the morning of February 5, 2023, Mr. Garza's neighbor contacted Mr. Garza's sister, Vicky Velasquez, to inform her that he saw SBSD personnel and San Bernardino County Fire Department personnel at Mr. Garza's property. Shortly thereafter, Ms. Velasquez and other family members learned from social media that there had been a police chase in Yucca Valley involving a red pickup truck, which matched the description of Mr. Garza's pickup truck.

54.     Based on this information, Mr. Garza's family was concerned that Mr. Garza might have been involved in the police chase. Throughout the day of February 5, 2023, Mr. Garza's family members repeatedly called the SBSD, RSD, Riverside County

Coroner's Office, and local hospitals in an effort to locate Mr. Garza. The SBSD, RSD, Riverside County Coroner's Office, and local hospitals all refused to provide the family with any information, including confirming or denying that Mr. Garza was involved in a police chase.

55.    In the evening of February 5, 2023, an investigator from the Riverside District Attorney's Office called Ms. Garza Logan and asked her to come to the SBSD station in Joshua Tree so that he could speak with her and her family members. Ms. Garza Logan hoped that the investigator would share information with her regarding Mr. Garza, so she agreed to meet with him. Ms. Garza Logan, Ms. Velasquez, and Ms. Velasquez's husband promptly drove to the SBSD station in Joshua Tree.

56.    Upon arriving at the station, the investigator refused to share any information with Ms. Garza Logan and Ms. Velasquez. He only told them that someone was deceased, but would not confirm or deny whether the decedent was Mr. Garza. He then told Ms. Garza Logan and Ms. Velasquez that he needed to speak with them separately. Ms. Garza Logan agreed to speak with him alone. The investigator then interrogated Ms. Garza Logan about Mr. Garza.

57.    At approximately 1:00 a.m. on February 6, 2023, a representative from the Riverside County Coroner's Office returned a call from Silvia Garza-Littman, Mr. Garza's sister. The representative informed Ms. Garza-Littman that Mr. Garza was deceased. This was the first notification of Mr. Garza's death that the family received.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – Excessive Force

### (Plaintiff, as Successor in Interest of Decedent Antonio F. Garza, Jr., Against All Defendants)

58.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

59.    On or about February 5, 2023, after causes of action arose in his favor, Decedent Antonio F. Garza, Jr. would have been a Plaintiff in this action had he

1  survived the injuries he sustained.

2       60.    Defendants, acting under color of state law, deprived Mr. Garza of rights,

3  privileges, and immunities secured by the Constitution and the laws of the United

4  States, including those secured by the Fourth Amendment to the Constitution,

5  incorporated and made applicable to the states by the Fourteenth Amendment, by,

6  among other things, subjecting him to unreasonable and excessive force, including

7  lethal force. Deputies Bill Abernathy and Nicholas Krinder unreasonably and repeatedly

8  shot Mr. Garza twelve times as he was experiencing a mental health crisis, resulting in

9  his death.

10       61.    The Defendant Deputies' decision to force a violent and unnecessary

11  confrontation with Mr. Garza was objectively unreasonable and a violation of Mr.

12  Garza's Fourth Amendment rights. There was no need for the Deputies to unreasonably

13  agitate or provoke Mr. Garza by chasing him with their guns drawn and pointed at him.

14  The Deputies had numerous alternatives to safely de-escalate the situation without the

15  use of deadly force. On information and belief, the Deputies were aware that Mr. Garza

16  was mentally ill and was not likely to respond rationally to deputies and officers

17  chasing him with their guns trained on him. There was no immediate need to subdue

18  Mr. Garza and take him into custody while he ran around the rough desert terrain,

19  where there were no civilians or property nearby, and the force the Deputies applied

20  was excessive and unreasonable.

21       62.    Each of the Defendant Deputies was both personally involved and an

22  integral participant in the violation of Mr. Garza's constitutional rights because each

23  Deputy was aware of the unlawful actions of the other Deputies, did not object to these

24  violations of Mr. Garza's rights, and participated in the violations by performing police

25  functions, including meaningful participation in the needless and unnecessary operation

26  to escalate the encounter with Mr. Garza and use unjustified force, including lethal

27  force.

28       63.    The foregoing wrongful acts and failures to act of Defendants killed Mr.

COMPLAINT FOR DAMAGES     -12-

Garza. As a proximate result of the foregoing wrongful acts of Defendants, and each of them, Mr. Garza suffered great pain, suffering, mental and emotional anguish, the loss of the enjoyment of life, and death.

64.     By engaging in the foregoing wrongful acts and failures to act, Defendants acted with conscious disregard of Mr. Garza's rights. There was no need for the Defendant Deputies to shoot Mr. Garza. In chasing Mr. Garza with their guns drawn, prepared to shoot and kill Mr. Garza, the Defendant Deputies escalated a peaceful encounter and ultimately resorted to lethal force without justification. It was clear to Defendants that Mr. Garza was in the midst of a mental health crisis. At no time did Mr. Garza harm, attempt to harm, or threaten to harm anyone, rendering the use of lethal force inappropriate.

65.     Defendants Abernathy, Krinder, and Does 1 and 3-9 acted pursuant to expressly adopted official policies or longstanding practices or customs of Defendant County of San Bernardino. These include policies and longstanding practices or customs on the use of force, including lethal force, in situations including but not limited to encounters with individuals who suffer from mental illness.

66.     In addition, the training policies of Defendant County of San Bernardino were not adequate to train its deputies to handle the usual and recurring situations with which they must deal, including, but not limited to, identifying and interacting with individuals experiencing a mental crisis and utilizing de-escalation techniques. Defendant County knew that the failure to adequately train deputies to identify and interact with individuals experiencing a mental crisis and utilize de-escalation techniques made it highly predictable that SBSD deputies would engage in conduct that would deprive persons such as Mr. Garza of their rights. Defendant County of San Bernardino was thus deliberately indifferent to the obvious consequences of the failure to train deputies adequately. This lack of training led to Mr. Garza's senseless killing at the hands of Defendants Abernathy and Krinder.

67.     Defendant County of San Bernardino's official policies and/or

COMPLAINT FOR DAMAGES                -13-

longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Mr. Garza by Defendants Abernathy, Krinder, and Does 1 and 3-9; that is, the County of San Bernardino's official policies and/or longstanding practices or customs are so closely related to the deprivation of Mr. Garza's rights as to be the moving force that caused his injuries.

68. San Bernardino County Sheriff Dicus, a final policymaker for the Defendant County of San Bernardino, ratified the actions and omissions of Defendants Abernathy, Krinder, and Does 1 and 3-9 in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

69. Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of punitive damages against the individual Defendants (but not the Defendant County) in an amount adequate to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**SECOND CAUSE OF ACTION**

**42 U.S.C. § 1983 – Deprivation of Rights of Plaintiff to**

**Familial Relationship with Decedent**

**(Plaintiff, in her individual capacity, Against All Defendants)**

70. Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

71. Defendants, acting under color of state law, deprived Plaintiff of her right to a familial relationship with decedent Antonio F. Garza, Jr. without due process of law in violation of the Fourteenth Amendment by their use of unreasonable, unjustified force and violence, which shocks the conscience, evidences deliberate indifference on the part of the Defendant Deputies, demonstrates an intent and purpose to harm, and caused injuries which resulted in Mr. Garza's death.

72. The foregoing wrongful acts and failures to act of Defendants killed Mr. Garza. As a proximate result of the foregoing wrongful acts of Defendants, and each of them, Mr. Garza suffered great pain, suffering, and death, and Plaintiff has suffered and

COMPLAINT FOR DAMAGES                    -14-

continues to suffer humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

73.     By engaging in the foregoing wrongful acts and failures to act, Defendants acted with conscious disregard of Mr. Garza's rights. There was no need for the Defendant Deputies to shoot Mr. Garza. In chasing Mr. Garza with their guns drawn, prepared to shoot and kill Mr. Garza, the Defendant Deputies escalated a peaceful encounter and ultimately resorted to lethal force without justification. It was clear that Mr. Garza was in the midst of a mental health crisis. At no time did Mr. Garza harm, attempt to harm, or threaten to harm anyone, rendering the use of lethal force inappropriate.

74.     Defendants Abernathy, Krinder, and Does 1 and 3-9 acted pursuant to expressly adopted official policies or longstanding practices or customs of Defendant County of San Bernardino. These include policies and longstanding practices or customs on the use of force, including lethal force, in situations including but not limited to encounters with individuals who suffer from mental illness.

75.     In addition, the training policies of Defendant County of San Bernardino were not adequate to train its deputies to handle the usual and recurring situations with which they must deal, including, but not limited to, identifying and interacting with individuals experiencing a mental crisis and utilizing de-escalation techniques. Defendant County knew that the failure to adequately train deputies to identify and interact with individuals experiencing a mental crisis and utilize de-escalation techniques made it highly predictable that its deputies would engage in conduct that would deprive persons such as Mr. Garza of their rights. Defendant County of San Bernardino was thus deliberately indifferent to the obvious consequences of the failure to train deputies adequately. This lack of training led to Mr. Garza's senseless killing at the hands of Defendants Abernathy and Krinder.

76.     Defendant County of San Bernardino's official policies and/or longstanding practices or customs, including but not limited to its training policies,

caused the deprivation of the constitutional rights of Mr. Garza by Defendants Abernathy, Krinder, and Does 1 and 3-9; that is, the County of San Bernardino's official policies and/or longstanding practices or customs are so closely related to the deprivation of Mr. Garza's rights as to be the moving force that caused his injuries.

77.     San Bernardino County Sheriff Dicus, a final policymaker for the Defendant County of San Bernardino, ratified the actions and omissions of Defendants Abernathy, Krinder, and Does 1 and 3-9 in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

78.     Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of punitive damages against the individual Defendants (but not the Defendant County) in an amount adequate to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 – Failure to Intervene

### (Plaintiff, in her individual capacity and as Successor in Interest of Decedent Antonio F. Garza, Jr., Against All Defendants)

79.     Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set herein.

80.     On or about February 5, 2023, after causes of action arose in his favor, Decedent Antonio F. Garza, Jr. would have been a Plaintiff in this action had he survived the injuries he sustained.

81.     Defendants, acting under color of state law, deprived Antonio F. Garza, Jr. of rights, privileges, and immunities secured by the Constitution and the laws of the United States, including those secured by the Fourth Amendment to the Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by, among other things, subjecting him to unreasonable and excessive force, including lethal force, and failing to intervene in the constitutional violations of their fellow deputies. Deputies Abernathy and Krinder unreasonably and repeatedly shot Mr. Garza

1    as he was experiencing a mental health crisis, resulting in his death.

2       82.    Plaintiff is informed and believe and thereon allege that, at all relevant

3    times herein mentioned, Defendants Abernathy, Krinder, and Does 1 and 3-9 were

4    present and had a realistic and reasonable opportunity to intervene to prevent the use of

5    excessive force by their fellow Deputies against Mr. Garza, but neglected to do so.

6       83.    The foregoing wrongful acts and failures to act of Defendants killed Mr.

7    Garza. As a proximate result of the foregoing wrongful acts of Defendants, and each of

8    them, Mr. Garza suffered great pain, suffering, the loss of enjoyment of life, and death,

9    and Plaintiff has suffered and continues to suffer humiliation, hardship, anxiety,

10   indignity, and severe mental and emotional anguish.

11      84.    By engaging in the foregoing wrongful acts and failures to act, Defendants

12   acted with conscious disregard of Mr. Garza's rights. There was no need for the

13   Defendant Deputies to shoot Mr. Garza. In chasing Mr. Garza with their guns drawn,

14   prepared to shoot and kill Mr. Garza, the Defendant Deputies escalated a peaceful

15   encounter and ultimately resorted to lethal force without justification. It was clear that

16   Mr. Garza was in the midst of a mental health crisis. At no time did Mr. Garza harm,

17   attempt to harm, or threaten to harm anyone, rendering the use of lethal force

18   inappropriate.

19      85.    Defendants Abernathy, Krinder, and Does 1 and 3-9 acted pursuant to

20   expressly adopted official policies or longstanding practices or customs of Defendant

21   County of San Bernardino. These include policies and longstanding practices or

22   customs on the failure to intervene in unconstitutional uses of force, including lethal

23   force, in situations including but not limited to encounters with individuals who suffer

24   from mental illness.

25      86.    In addition, the training policies of Defendant County of San Bernardino

26   were not adequate to train its deputies to handle the usual and recurring situations with

27   which they must deal, including, but not limited to, intervening in the constitutional

28   violations of fellow deputies in situations involving identifying and interacting with

COMPLAINT FOR DAMAGES            -17-

individuals experiencing a mental crisis and utilizing de-escalation techniques. Defendant County knew that the failure to adequately train deputies to intervene in the constitutional violations of other deputies in situations involving identifying and interacting with individuals experiencing a mental crisis and utilizing de-escalation techniques made it highly predictable that its deputies would fail to intervene in conduct that would deprive persons such as Mr. Garza of their rights. Defendant County of San Bernardino was thus deliberately indifferent to the obvious consequences of the failure to train deputies adequately. This lack of training led to Mr. Garza's senseless killing at the hands of Defendants Abernathy and Krinder.

87.     Defendant County of San Bernardino's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Mr. Garza by Defendants Abernathy, Krinder, and Does 1 and 3-9; that is, the County of San Bernardino's official policies and/or longstanding practices or customs are so closely related to the deprivation of Mr. Garza's rights as to be the moving force that caused his injuries.

88.     San Bernardino County Sheriff Dicus, a final policymaker for the Defendant County of San Bernardino, ratified the actions and omissions of Defendants Abernathy, Krinder, and Does 1 and 3-9 in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

89.     Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of punitive damages against the individual Defendants (but not the Defendant County) in an amount adequate to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### FOURTH CAUSE OF ACTION

**42 U.S.C. § 12131– Violation of Title II of the Americans with Disabilities Act (Plaintiff, in her individual capacity and as Successor in Interest of Decedent Antonio F. Garza, Jr., Against Defendant County of San Bernardino)**

90.     Plaintiff realleges and incorporates by reference each and every allegation

contained above as though fully set forth herein.

91.     On or about February 5, 2023, after causes of action arose in his favor, Decedent Antonio F. Garza, Jr. would have been a Plaintiff in this action had he survived the injuries he sustained. In addition, Plaintiff is a "person aggrieved" within the meaning of the ADA.

92.     Congress enacted the Americans With Disabilities Act ("ADA") upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101(a)(2).

93.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

94.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

95.     The U.S. Department of Justice implemented Title II, 28 C.F.R. § 35.160, regulations which require public entities to take appropriate steps to ensure that communications with members of the public with disabilities are as effective as communications with others.

96.     At all times relevant to this action, Defendant County of San Bernardino was a public entity within the meaning of Title II of the ADA and provided programs, services, and activities to the general public.

97.     The U.S. Department of Justice, Civil Rights Division, Disability Rights section has published, "Commonly Asked Questions About the Americans with Disabilities Act and Law Enforcement," a document in which the U.S. Department of

Justice provides guidelines in the interpretation of Title II of the ADA (the Guidelines). In the Guidelines, the Department of Justice notes that the ADA affects virtually everything that police officers and deputies do, including providing emergency medical services, arresting, booking, and holding suspects, and other duties.

98.     At all times relevant to this action, Mr. Garza was a "qualified individual" as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131(2) in that he suffered from a mental illness which at times caused him to experience severe paranoia and behave erratically and resulted in substantial limitations in his mental and emotional processes such as thinking, concentrating, and interacting with others.

99.     On information and belief, at all times relevant to this action, Defendants were made aware of Mr. Garza's disability through, for example, Mr. Garza's erratic behavior with responding officers. In addition, on information and belief, at all relevant times SBSD was made aware of Mr. Garza's disability through prior contacts with Mr. Garza, including numerous wellness checks conducted by SBSD deputies on Mr. Garza and Mr. Garza's contacts with the criminal justice system while in SBSD custody.

100.    During their encounter with Mr. Garza, the Defendant Deputies failed to reasonably accommodate Mr. Garza's disability, causing him to suffer greater injury in that process than other seized persons. Through the acts and omissions of Defendant County of San Bernardino and their agents and employees described herein, Defendant County of San Bernardino violated Title II of the ADA by excluding Mr. Garza from participation in, by denying him the benefits of, and subjecting him to discrimination in the benefits and services it provides to the general public. Specifically, the Defendant Deputies needlessly and recklessly escalated the situation with Mr. Garza by chasing him with their guns drawn and pointed at him and shooting him multiple times, all without justification or any reasonable basis and without taking into account his mental illness. Rather than take these unjustified, unreasonable, harmful, and overly provocative steps, the Defendants Deputies could have de-escalated the situation and thus could have avoided subjecting Mr. Garza to greater injury compared to other

arrestees.

101. Plaintiff is informed, believes, and thereon alleges that Defendant County of San Bernardino and its agents and employees have failed and continue to fail to take into account and provide reasonable accommodations for persons with mental disabilities by failing to, among other things:

    a. Adopt and enforce policies and procedures for communicating effectively, controlling, and interacting with persons with mental disabilities;

    b. Adopt and enforce policies and procedures for providing persons with mental disabilities access to medical facilities, including the provision of employees with medical training and medical resources to communicate, interact with, and control such persons;

    c. Train and supervise County of San Bernardino and SBSD deputies and employees to communicate effectively, control, interact with, and safely de-escalate encounters persons with mental disabilities;

    d. Train and supervise County of San Bernardino and SBSD deputies and employees regarding the cognition and behavior of persons with mental disabilities; and

    e. Train and supervise County of San Bernardino and SBSD deputies and employees that they should not use force, or put themselves in positions where the use of force may become necessary, without first notifying and obtaining the assistance of persons who have the requisite training and experience in communicating effectively with and controlling and interacting with persons with mental disabilities.

102. As a direct and proximate result of the aforementioned acts, including but not limited to Defendants' deliberate indifference to the violation of Mr. Garza's federally protected rights, Mr. Garza suffered great pain, suffering, and death, and Plaintiff has suffered and continues to suffer humiliation, hardship, anxiety, indignity,

and severe mental and emotional anguish.

103.   Pursuant to 42 U.S.C. § 12133, Plaintiff is entitled to recover the compensatory damages described herein, and reasonable attorneys' fees and costs incurred in bringing this action.

## FIFTH CAUSE OF ACTION

### 29 U.S.C. § 794 – Violation of the Rehabilitation Act

**(Plaintiff, in her individual capacity and as Successor in Interest of Decedent Antonio F. Garza, Jr., Against Defendant County of San Bernardino)**

104.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

105.   On or about February 5, 2023, after causes of action arose in his favor, Decedent Antonio F. Garza, Jr. would have been a Plaintiff in this action had he survived the injuries he sustained. In addition, Plaintiff is a "person aggrieved" within the meaning of 29 U.S.C. § 794a(a)(2).

106.   Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "[N]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits, or be subjected to discrimination under any program or activity receiving federal financial assistance ..." 29 U.S.C. § 794.

107.   Mr. Garza, at all times relevant herein, was a qualified individual with a disability within the meaning of the Rehabilitation Act because he suffered from a mental illness, which at times caused him to experience severe paranoia and behave erratically and resulted in substantial limitations in his mental and emotional processes such as thinking, concentrating, and interacting with others. *See* 29 U.S.C. § 705(20)(B).

108.   At all times relevant to this action Defendant County of San Bernardino was a recipient of Federal funding within the meaning of the Rehabilitation Act.

109.   Through its acts and omissions described herein, Defendant County of San

Bernardino has violated the Rehabilitation Act, including all applicable implementing regulations, by excluding Mr. Garza, from participation in, denying him the benefits of, and subjecting him to discrimination in the benefits and services it provides to the general public.

110.   As a direct and proximate result of the aforementioned acts, including but not limited to Defendants' deliberate indifference to the violation of Mr. Garza's federally protected rights, Mr. Garza suffered great pain, suffering, and death, and Plaintiff has suffered and continues to suffer humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish.

111.   Pursuant to 29 U.S.C. § 794(a), Plaintiff is entitled to recover the damages described in this Complaint and reasonable attorneys' fees and costs incurred in bringing this action.

## SIXTH CAUSE OF ACTION

### Wrongful Death (e.g., Cal. Civ. Proc. Code § 377.60, Cal. Civil Code § 43)

### (Plaintiff, in her individual capacity, Against All Defendants)

112.   Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

113.   Antonio F. Garza, Jr. had no predeceased spouse or domestic partner and has no surviving spouse, domestic partner, or issue. Accordingly, Plaintiff Matilde Garza, as Mr. Garza's surviving parent, is entitled to his property by intestate succession pursuant to Probate Code § 6402, and is thus the proper defendant for wrongful death claims under Civil Code § 377.60(a).

114.   Mr. Garza's death was a direct and proximate result of the aforementioned wrongful and/or negligent acts and/or omissions of Defendants.

115.   Defendants Abernathy and Krinder's shooting death of Mr. Garza was unjustified, unlawful, and unnecessary under the circumstances, given that Mr. Garza was experiencing a mental health crisis and did not place any of the Defendant Deputies

1 | or any member of the public in any danger.

2 |     116.  Specifically, Defendant Deputies ignored established law enforcement

3 | practices and initiated an aggressive interaction with Mr. Garza that quickly escalated

4 | into the intentional and deliberate killing of a mentally ill man who clearly posed no

5 | threat to the Deputies or anyone else. No facts justify Abernathy and Krinder's killing

6 | of Mr. Garza. There was no reasonable basis for the Deputies to perceive any threat

7 | from Mr. Garza.

8 |     117.  There was no need for the Deputies to unreasonably agitate or provoke Mr.

9 | Garza by chasing him with their guns drawn and pointed at him. The Deputies had

10 | numerous alternatives to safely de-escalate the situation. On information and belief, the

11 | Deputies were aware that Mr. Garza was mentally ill and was not likely to respond

12 | rationally to deputies chasing him with their guns trained on him. There was no

13 | immediate need to subdue Mr. Garza and take him into custody while he ran around the

14 | rough desert terrain, where there were no civilians or property nearby, and the force the

15 | Deputies applied was excessive and unreasonable.

16 |     118.  On information and belief, the Defendant Deputies knew or should have

17 | known that Mr. Garza was severely mentally ill and posed no threat to the Defendant

18 | Deputies or anyone else. However, the Defendant Deputies ignored established police

19 | practices, ignored the fact that Mr. Garza was mentally ill, initiated an unnecessary

20 | interaction with Mr. Garza in which they chased Mr. Garza with their guns pointed at

21 | him, and when Mr. Garza attempted to run away from the Defendant Deputies in fear,

22 | Defendants Abernathy and Krinder shot Mr. Garza multiple times, killing him.

23 |     119.  Each of the Defendant Deputies was both personally involved and an

24 | integral participant in the violation of Mr. Garza's constitutional rights because each

25 | Deputy was aware of the unlawful actions of the other Deputies, did not object to these

26 | violations of Mr. Garza's rights, and participated in the violations by performing police

27 | functions, including meaningful participation in the needless and unnecessary operation

28 | to escalate the encounter with Mr. Garza and use unjustified force, including lethal

1   force.

2        120.   Defendants' acts and/or omissions thus were a direct and proximate cause

3   of Plaintiff's injuries and damages, as alleged herein.

4        121.   Each of the Defendant Deputies was both personally involved and aided

5   and abetted in the violation of Plaintiff's rights. Each Deputy knew that the other

6   Deputies were committing unlawful actions against Mr. Garza as they planned to and

7   did unlawfully use excessive force against Mr. Garza, killing him. Each Deputy gave

8   substantial assistance or encouragement to the other Deputies and each Deputy's

9   conduct was a substantial factor in causing harm to Plaintiff.

10       122.   As a direct and proximate result of Defendants' wrongful and/or negligent

11  acts and/or omissions, Plaintiff incurred funeral and burial expenses in an amount to be

12  proved at trial.

13       123.   As a direct and proximate result of Defendants' wrongful and/or negligent

14  acts and/or omissions, Plaintiff suffered the loss of Mr. Garza's services, society, care,

15  comfort, support, protection, gifts and benefits, as well as the loss of the present value

16  of his future services to them for the remainder of her lives.

17       124.   Plaintiff is further entitled to recover prejudgment interest.

18       125.   Defendant County of San Bernardino is vicariously liable for its

19  employees' wrongful and/or negligent acts and/or omissions.

20       126.   Defendants' conduct was willful, wanton, malicious, and oppressive,

21  thereby justifying an award of punitive damages against the individual Defendants (but

22  not the Defendant County) in an amount adequate to punish the wrongful conduct

23  alleged herein and to deter such conduct in the future.

24                       **SEVENTH CAUSE OF ACTION**

25                   **Cal. Civil Code § 52.1 – Bane Act**

26  **(Plaintiff, as Successor in Interest of Decedent Antonio F. Garza, Jr., Against All**

27                              **Defendants)**

28       127.   Plaintiff realleges and incorporates by reference each and every allegation

contained above as though fully set forth herein.

128.   On or about February 5, 2023, after causes of action arose in his favor, Decedent Antonio F. Garza, Jr. would have been a Plaintiff in this action had he survived the injuries he sustained.

129.   The California Constitution Art. I, § 13 and the United States Constitution, Amendment IV, guarantee the right of persons to be free from arrests without probable cause, unreasonable searches and seizures, and use of unnecessary and excessive force on the part of law enforcement officers. Defendants, by engaging in the wrongful acts and failures to act alleged in this action, denied this right to Mr. Garza by threats, intimidation, or coercion, either intentionally or through their deliberate indifference. Defendant Deputies' unlawful actions were a substantial factor causing Mr. Garza's death and also severe injuries and suffering prior to his death. For this reason, Plaintiff, as successor in interest to Mr. Garza, may state a claim for damages pursuant to Civil Code section 52.1.

130.   Each of the Defendant Deputies was both personally involved and aided and abetted in the violation of Plaintiff's rights. Each Deputy knew that the other Deputies were committing unlawful actions against Mr. Garza as they planned to and did unlawfully use excessive force against Mr. Garza, killing him. Each Deputy gave substantial assistance or encouragement to the other Deputies and each Deputy's conduct was a substantial factor in causing harm to Plaintiff.

131.   Defendant County of San Bernardino is vicariously liable for the Defendant Deputies' misconduct.

132.   As the direct and legal result of Defendants' conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to those set forth above. Plaintiff is entitled to statutory damages under Civil Code section 52, as well as compensatory and punitive damages and attorneys' fees.

133.   Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of punitive damages against the individual Defendants (but

not the Defendant County) in an amount adequate to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### EIGHTH CAUSE OF ACTION

**Assault (e.g., Cal. Civil Code § 43)**

**(Plaintiff, as Successor in Interest of Decedent Antonio F. Garza, Jr., Against All Defendants)**

134.   Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

135.   On or about February 5, 2023, after causes of action arose in his favor, Decedent Antonio F. Garza, Jr. would have been a Plaintiff in this action had he survived the injuries he sustained.

136.   Defendants Abernathy, Krinder, and Does 1 and 3-9, intended to cause harmful or offensive contact with Mr. Garza, and threatened to touch Mr. Garza in a harmful or offensive manner.

137.   Mr. Garza reasonably believed that he was about to be touched in a harmful or offensive manner, and it reasonably appeared to Mr. Garza that Defendants were about to carry out their threats.

138.   Mr. Garza did not consent to Defendants' conduct.

139.   Mr. Garza was harmed.

140.   Defendants' conduct was a substantial factor in causing Mr. Garza's harm.

141.   Each of the Defendant Deputies was both personally involved and aided and abetted in the violation of Plaintiff's rights. Each Deputy knew that the other Deputies were committing unlawful actions against Mr. Garza as they planned to and did unlawfully use excessive force against Mr. Garza, killing him. Each Deputy gave substantial assistance or encouragement to the other Deputies and each Deputy's conduct was a substantial factor in causing harm to Plaintiff.

142.   Defendant County of San Bernardino is vicariously liable for the actions of the Deputy Defendants.

143.   Defendants Abernathy, Krinder, and Does 1 and 3-9's conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of punitive damages against the individual Defendants (but not the entity Defendants) in an amount adequate to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## NINTH CAUSE OF ACTION

### Battery (e.g., Cal. Civil Code § 43)

### (Plaintiff, as Successor in Interest of Decedent Antonio F. Garza, Jr., Against All Defendants)

144.   Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

145.   On or about February 5, 2023, after causes of action arose in his favor, Decedent Antonio F. Garza, Jr. would have been a Plaintiff in this action had he survived the injuries he sustained.

146.   Defendants Abernathy and Krinder intentionally touched Mr. Garza, or caused him to be touched.

147.   Defendants Abernathy and Krinder used unreasonable force. Defendants had reason to believe Mr. Garza was mentally ill. Mr. Garza never harmed, attempted to harm, or threatened to harm anyone, and he presented no threat to another person.

148.   Mr. Garza did not consent to the use of that force.

149.   Mr. Garza was harmed. As a result of the conduct of the Defendants as alleged herein, Mr. Garza sustained and incurred damages for a measurable period of time before his death, collapsing onto the ground, bleeding out, and dying alone in the desert. Plaintiff, as successor in interest to Antonio F. Garza, Jr., therefore, seeks recovery for personal property damages, and all other related expenses, damages, and losses, as permitted by § 377.34 of the Code of Civil Procedure, against Defendants, according to proof at trial.

150.   The use of unreasonable force by Defendants Abernathy and Krinder was a substantial factor in causing Mr. Garza's harm.

151.   Each of the Defendant Deputies was both personally involved and aided and abetted in the violation of Plaintiff's rights. Each Deputy knew that the other Deputies were committing unlawful actions against Mr. Garza as they planned to and did unlawfully use excessive force against Mr. Garza, killing him. Each Deputy gave substantial assistance or encouragement to the other Deputies and each Deputy's conduct was a substantial factor in causing harm to Plaintiff.

152.   Defendants County of San Bernardino is vicariously liable for the actions of the Deputy Defendants.

153.   Defendants Abernathy and Krinder's conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of punitive damages against the individual Defendants (but not the Defendant County) in an amount adequate to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## TENTH CAUSE OF ACTION

### Negligence (e.g., Cal. Civil Code § 43)

### (Plaintiff, as Successor in Interest of Decedent Antonio F. Garza, Jr., Against All Defendants)

154.   Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

155.   On or about February 5, 2023, after causes of action arose in his favor, Decedent Antonio F. Garza, Jr. would have been a Plaintiff in this action had he survived the injuries he sustained.

156.   Defendants' actions and omissions resulting in Mr. Garza's death were the result of their negligent failure to abide by the standard of care imposed upon law enforcement departments and deputies who regularly interact with individuals who are mentally ill. Instead of the numerous non-lethal options available to them, the Defendant Deputies chose instead to use deadly force in contravention of established practices and established standards of care.

157.   Defendant County of San Bernardino failed to appropriately hire,

supervise, train, review, and ensure that its Deputies abided by the standard of care, failed to enact appropriate standards and procedures that would have prevented such harms to Plaintiff, including failing to train Deputies (1) to identify and interact with individuals experiencing a mental crisis; (2) to utilize de-escalation techniques; and (3) not to use excessive force situations where such actions are not justified.

158.   Each of the Defendant Deputies was both personally involved and aided and abetted in the violation of Plaintiff's rights. Each Deputy knew that the other Deputies were committing unlawful actions against Mr. Garza as they planned to and did unlawfully use excessive force against Mr. Garza, killing him. Each Deputy gave substantial assistance or encouragement to the other Deputies and each Deputy's conduct was a substantial factor in causing harm to Plaintiff.

159.   As a direct result of Defendants' conduct, which included an unnecessary attempt to seize, arrest, and use excessive force upon Mr. Garza, Plaintiff was injured.

160.   Defendant County of San Bernardino is vicariously liable for the actions of the Deputy Defendants.

161.   The acts and failures to act as alleged herein caused severe anxiety, pain, suffering and emotional distress and injury to Plaintiff, and Plaintiff is therefore entitled to damages in an amount to be proven at trial.

162.   Defendants Abernathy and Krinder's conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of punitive damages against the individual Defendants (but not the Defendant County) in an amount adequate to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.      For compensatory, general, and special damages against each Defendant, jointly and severally, amounts to be proven at trial;

2.      Punitive and exemplary damages against individually named Defendants Abernathy, Krinder, and Does 1 and 3-9, in an amount appropriate to punish

COMPLAINT FOR DAMAGES                    -30-

1   Defendant(s) and deter others from engaging in similar misconduct;

2       3.      Prejudgment and post-judgment interest;

3       4.      For costs of suit and reasonable attorneys' fees and costs as authorized by

4   statute or law;

5       5.      For restitution as the Court deems just and proper;

6       6.      For such other relief, including injunctive and/or declaratory relief, as the

7   Court may deem proper.

8                        **DEMAND FOR JURY TRIAL**

9       Plaintiff hereby demands trial by jury in this action.

10

11  Dated: September 11, 2023          Respectfully Submitted,

12                                     HADSELL STORMER RENICK & DAI LLP

13

14                                     By:  ___/s/ Rebecca Brown_____
                                           Brian Olney
15                                         Rebecca Brown
                                       Attorneys for Plaintiff
16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES             -31-